No. 12974

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

WILLIAM G. MITCHELL,

Plaintiff and Appellant,

-vs-

HAROLD F. MITCHELL,

Defendant and Respondent.

Appeal from:  District Court of the Third Judicial District,
Honorable John B. McClernan, Judge presiding.

Counsel of Record:

For Appellant:

William R. Taylor argued, Deer Lodge, Montana
Radonich and Reardon, Anaconda, Montana
John N. Radonich appeared, Anaconda, Montana

For Respondent:

Knight, Dahood and Mackay, Anaconda, Montana
C. F. Mackay argued, Anaconda, Montana

Submitted:  November 6, 1975

Decided:  JAN 16 1976

Filed:  JAN 16 1976

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment in an accounting action from the district court, Deer Lodge County, sitting without a jury.

Plaintiff William G. Mitchell is the son of defendant Harold F. Mitchell. In August 1970, the son filed a complaint alleging the existence of an oral partnership between himself and his father, and seeking to obtain a full accounting of partnership funds and assets. The complaint stated: (1) that the purpose of the partnership was to acquire certain described real property, commonly known as Yankee Flats, west of Anaconda, Montana, and that both the son and the father had advanced monies to apply on the contract for purchase; (2) that the father now claims an exclusive right in and to the real property and denies the son has any right to the use, or ownership in the properties; and (3) that a demand for an accounting of the monies advanced by the son for the purchase of the real property has been denied by the father.

Answer and demand for a jury trial was filed by the father in September 1971, more than a year after the filing of the complaint. In that answer the father denied the existence of an oral partnership agreement; denied the son had advanced money on a contract for deed to purchase the real property; and denied the son had any right to the use, or ownership in the real property. The answer stated that the reason no accounting was ever given was "that there has never been a partnership and therefore this answering defendant was not under any obligation to the plaintiff."

In April 1973, Judge Robert J. Boyd of the third judicial district was disqualified and Judge John B. McClernan, of the second judicial district, assumed jurisdiction.

On July 23, 1973, a trial without jury was held in Deer Lodge County. Immediately before trial and a period of one year and ten months after the original answer, the defense counsel handed counsel for the plaintiff an amended answer and demand for a jury trial. Plaintiff's counsel objected to the offer of the amended answer on the grounds that it was untimely, prejudicial and would cause a delay in the trial. The delay in the trial was objected to because this was the second trip plaintiff had made from St. Louis, Missouri, at considerable expense.

The court overruled the objection and granted leave to file the amended answer. The demand for a jury trial was denied. This exchange then took place between counsel for plaintiff and the court:

"MR. TAYLOR: Your Honor, in view of the Court's ruling, may we recess to read the answer?

"THE COURT: You may sit down and read the answer Mr. Taylor."

Mr. Taylor then renewed his objection and added:

"* * * the Defendant in this amended answer has completely changed his defense in the action.

"THE COURT: The Court will take that into consideration, Mr. Taylor."

Later, during the course of trial, Mr. Taylor requested a recess to analize and to adjust to the amended answer, and the following allowance was made:

"THE COURT: Very well, we will recess for ten minutes.

"THE COURT: Court is in session. You may proceed.

"MR. TAYLOR: You may return to the stand, Mr. Mitchell."

The trial then proceeded until finished, a period of two days.

The amended answer, filed the day of trial, admits the existence of the partnership and that the son had made advances of money towards the purchase of Yankee Flats. The answer then continues with these defenses: (1) Plaintiff "failed to keep his

end of the agreement which was to return to Montana and help with the ownership use and labors on said real properties and failed to continue to make the payments agreed upon and to put in an equal amount of capital." (2) That "the defendant denies that he has failed to offer an accounting * * *." (3) The "defendant admits that he has possession of the premises and records * * * and defendant stands ready to account to plaintiff for his contributions * * *."

On June 24, 1974, almost a year after trial, an interlocutory order settling partnership accounts and dissolving the partnership was signed and filed by the district court. In September 1974, a judgment was entered which made final the terms of the interlocutory order. In the interlocutory order, the district court made these findings of fact:

> "* * * the partnership remains in full force and effect, and all property in the 'Yankee Flats' tract is, in fact, partnership property.

> "That the agreement between the partners required each to share equally in the amount of capital invested, and equally in the labors of the project. The Plaintiff's (son's) share of capital investment is not fully paid, and he owes the Defendant (father) the sum of $2,949.29 in money. That from the date of the partnership agreement (May, 1964) until the date of the institution of this suit (August 4, 1970), the Defendant (father), on weekends and holidays, contributed approximately 302 days of labor (clearing brush, rocks, building roads, mending fences, etc.), and the Plaintiff (son), during said period, contributed approximately two days of labor; that the Plaintiff (son) owes the Defendant (father) 300 days of labor on the partnership property, payable either in kind or in cash at the prevailing rate for common labor.

> "That the relationship between the Plaintiff (son) and the Defendant (father) is so strained, unfriendly and irreconciable that the further continuance of the partnership is impractical."

The court then dissolved the partnership and offered:

> "* * * upon application of either party, the Court will proceed to determine the respective interests of the parties in the partnership property, and partition the same in accordance therewith."

From that judgment plaintiff appeals.

- 4 -

Several issues are presented on appeal but the decisive issue is whether the amended answer was properly allowed to be filed under Rule 15(a), M.R.Civ.P.

The applicable portion of Rule 15(a), M.R.Civ.P., provides:

> "* * * Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * * *"

For the purpose of placing the issue in the proper frame work, we examine the reasons for and the background of Rule 15(a). That rule contains language identical to Rule 15(a) of the federal rules.

In 6 Wright & Miller, Federal Practice and Procedure: Civil §§ 1487, 1488, there are comments and reasons for Rule 15(a).

§1487  The liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases. Indeed, the text of the rule makes it clear that permission to amend is not to be given automatically but is allowed only "when justice so requires". Perhaps the most frequent reason given for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading. Thus, the facts of each case must be examined to determine if the threat of prejudice is sufficient to justify denying leave to amend. This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.

The court also may consider the good faith of the party seeking the amendment and the reasons for the movant's delay.

§1488 Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend. The policy of allowing amendments to be made at any time during the litigation is sound. It would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been completed or testimony has been taken at trial. Nonetheless, in keeping with the purpose of Rule 15(a), which is to facilitate a determination of the action on its merits, a motion to amend should be as soon as the necessity for altering the pleading becomes apparent.

In addition to considering the possible prejudice resulting from the moving party's delay in making his amendment, some courts also have decided a motion for leave to amend on the basis of the reason given for the inaction. If the party can demonstrate to the court that the delay was not excessive and was excusable or that his failure to include the amendment in the original pleading was due to an oversight, the amendment may be allowed. However, in the absence of oversight or excusable neglect, courts have denied leave to amend when the moving party knew about the facts on which the proposed amendment was based but omitted the necessary allegations from the original pleading. Some courts also have held that a long delay by the movant constitutes laches so that a refusal to permit an amendment is warranted.

In the instant case, the original answer denied the existence of a partnership; denied a contribution of capital by the plaintiff son and refused to give an accounting of partnership funds and assets. The amended answer turned the situation around by admitting both the partnership and a contribution of capital by plaintiff son and stated the defendant father now was ready to give a full accounting. The amendment then placed in issue how much labor had been contributed by each partner.

When the amended answer was offered, the district court made no inquiry as to the reasons why these new facts were not pleaded in the original answer or why there was a delay of nearly two years in offering the amendment, or whether the amendment would impose a prejudicial burden on plaintiff. The district court in fact refused to grant even a continuance for plaintiff's counsel to study the amendment and prepare his case accordingly. Thus, following a liberal policy of amendment of pleadings as previously discussed, opportunity must be afforded the opposing party to adjust accordingly. Failure to permit this is error and demands a new trial.

The judgment of the district court is vacated and the cause is remanded to the district court for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.