No. 81-40

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA, upon the relation of
FLORENCE-CARLTON CONSOLIDATED SCHOOLS
DISTRICT 15 & 6 et al.,

Petitioners,

vs.

DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN
AND FOR THE COUNTY OF LEWIS & CLARK et al.,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioners:

Herron, Meloy & Llewellyn, Helena, Montana
Clayton Herron argued, Helena, Montana and
 Peter Meloy argued, Helena, Montana

For Respondents:

Bellingham & Christenson, Billings, Montana
Cresap McCracken argued, Great Falls, Montana
Bruce T. Toole argued, Billings, Montana
John North, Helena, Montana
Robert Gannon, Butte, Montana
Thomas D. Ebzery, Billings, Montana
Murphy, Robinson Law Firm, Kalispell, Montana
Gregory C. Black, Butte, Montana
Alan Hux and Carol Dunn, Indianapolis, Indiana
Hon. John Henson, District Judge, Missoula, Montana

Submitted: June 12, 1981

Decided: AUG 3 - 1981

Filed: AUG 3 - 1981

*Thomas J. Kearney*

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This action was commenced in the District Court of the First Judicial District, in and for the County of Lewis and Clark, by complaint for declaratory judgment on August 31, 1979. On March 20, 1980, an amended complaint, adding necessary parties and deleting parties deemed unnecessary to this action, was filed. Plaintiffs-relators filed a motion for leave to file a second amended complaint on June 18, 1980. Prior to any action of the court regarding this motion, relators filed a second motion for leave to file a revised second amended complaint. Defendants objected to this motion and requested sanction be imposed upon relators as a condition to proceeding with this revised second amended complaint. Respondent District Court granted the motion for leave to file the revised complaint, but reserved ruling on the requested terms. After briefing by all parties, respondent District Court granted defendants' request by imposing an award of costs upon relators as a condition precedent to proceeding with the revised second amended complaint. From this order, relators petition for a writ of supervisory control.

On August 31, 1979, Friends of the Earth, Inc., Edward M. Dobson, Daniel H. Henning, Gary Matson, Vicki Gale, Robert K. Lendis, the Montana Education Association, and the Montana State Federation of Teachers, as plaintiffs, filed a complaint for declaratory judgment against the Montana Board of Land Commissioners and Westmoreland Resources, Inc., as defendants. This complaint alleged basically that the land commissioners were not requiring Westmoreland Resources, Inc., to pay the full market value

for royalty rights for the extraction of coal on state trust lands as required by law. The complaint prayed for declaratory judgment that coal leases issued to Westmoreland by the land commissioners were null and void, for an adjudication of the land commissioners' duty to obtain full market value, and for attorney fees and costs of suit.

Westmoreland Resources, Inc., filed successive motions for substitution of judge, and the Honorable John S. Henson assumed jurisdiction on November 1, 1979. Pursuant to stipulation of the parties and order of the court, an amended complaint was filed on January 17, 1980, which added Florence-Carlton Consolidated Schools, Districts 15 and 6, as a plaintiff to this action.

On March 11, 1980, following motions, notices, and hearings, the District Court ruled that Friends of the Earth, Inc., did not have standing and was, therefore, dismissed from the action. The court also ruled that additional parties were indispensable to the action and ordered plaintiffs, relators here, to effect joinder of such parties. On March 20, 1980, in compliance with this order, relators filed an amended complaint joining the following defendants with the land commissioners and Westmoreland Resources, Inc.: Arkland Company; Ayrshire Coal Company; the Carter Oil Company; Consolidated Coal Company; Decker Coal Company; Gulf Oil Corporation; Mapco, Inc.; Mobil Oil Corporation; Spring Creek Coal Company; Peabody Coal Company; Peter Kiewit Sons' Corporation; Robert W. Adams; United States Steel Corporation; Western Energy Company; Thermal Energy, Inc.; and Thermal Resources, Inc.

The amended complaint sought to render void all state

-3-

school land coal leases held by the above-named defendants. It sought declaratory judgment alleging solely that the royalty rates in the existing leases did not reflect full market value. No alternative theories or grounds for challenging the leases than that included in the original complaint of August 31, 1979, were included in the amended complaint filed March 20, 1980.

On June 18, 1980, relators filed and served a motion for leave to file a second amended complaint. All defendants, except the Board of Land Commissioners, Westmoreland Resources, Inc., Thermal Resources, Inc., and Thermal Energy, Inc., had filed responsive pleadings to the amended complaint of March 20, 1980, prior to the second motion to amend. The proposed second amended complaint added an additional count in mandamus and set forth five additional allegations, reasons and bases for relators' contention that the coal leases were null and void.

Defendant United States Steel Corporation objected to the filing of the second amended complaint and, in the alternative, requested the court to impose sanctions upon relators, such sanctions to be a reasonable allowance of attorney fees necessarily incurred in preparing an answer to the second amended complaint. This objection was filed June 24, 1980.

Prior to a ruling on either relators' motion for leave to file a second amended complaint or United States Steel's objection to such motion, relators filed a motion for leave to file a revised second amended complaint on July 16, 1980. The proposed effect of this revision was to make ten changes to the second amended complaint, such changes

being matters of style and correct usuage, rather than matters of substance. This motion was noticed for hearing on August 6, 1980.

Prior to August 6, 1980, all defendants served and filed objections to relators' motion for leave to file the second amended complaint revised. All defendants requested sanctions or conditions be imposed upon relators in the alternative.

Following hearing on August 6, 1980, respondent District Court ruled that leave was granted to relators to file the second amended complaint (revised). The court reserved ruling on the question of imposition of sanctions until further briefing could be submitted by all parties.

On September 24, 1980, respondent court granted the request for terms by awarding costs to defendants. The award was limited by the court to the "expenses, costs, attorney fees and so forth that the defendants have incurred" relating to the revised second amended complaint.

Defendants requested that such information be presented to the court by affidavits. The court requested such affidavits from defendants by October 7, 1980. The court then granted relators until October 13, 1980, to review the affidavits and decide whether to request a hearing regarding the costs or to simply file something on the record.

Defendants filed affidavits of costs ranging from $209.28 to $2,520. Relators filed an affidavit and motions in opposition to claims for attorney fees on October 13, 1980, but failed to request a hearing on the matter. Eventually relators did file a motion for a hearing on November

28, 1980. The motion, however, came after the imposed deadline; thus, the court took no action regarding the request.

On November 28, 1980, the court awarded each defendant $150 partial costs as a condition to relators' proceeding on the revised second amended complaint. The court further ordered that such an award was not due the Montana Board of Land Commissioners or Westmoreland Resources because those defendants had not filed any responsive pleadings in the matter. Relators were required to make payment within thirty days after entry of the judgment.

On December 22, 1980, relators deposited with the clerk of the court five checks in the amount of $150 each, payable to the five separate law firms handling the action for defendants. The checks were deposited with the express reservation that they were to be delivered only if the court indicated that the amount received was in full satisfaction of its order. These checks, however, were never delivered to defense counsel because on January 9, 1981, Judge Henson wrote relators' counsel, informing him that relators were required to pay each defendant designated by the order $150, not each law firm involved (a total award of $2,400).

Subsequently, various defendants filed motions for dismissal because of relators' noncompliance with the order of November 28, 1980. On January 30, 1981, relators filed this petition for writ of supervisory control regarding the order awarding costs as a condition to proceeding on the revised second amended complaint.

There have been two issues submitted to this Court

for review:

1. Is a writ of supervisory control an appropriate form of judicial review in this instance?

2. Did the District Court abuse its discretion in awarding "costs" to defendants as a condition to relators' proceeding on the second amended complaint (revised)?

Relators contend generally that there is no direct appeal or other remedial procedure available in this instance. Moreover, if review is not granted under the petition or the award not paid, relators will be denied the right to have their complaint determined in accordance with due process of law, thereby resulting in gross injustice, oppression and irreparable injury.

Regarding the second issue relators contend that the District Court has no authority to impose sanctions against a party as a condition to allowing proposed amendments to its pleadings. Even if terms can be imposed, the District Court's awarding of "attorney fees," as opposed to the award of "incidental costs," was improper. Furthermore, since the defendants have not been prejudiced by the amendments and since relators have not engaged in gross misconduct, the imposition of sanctions cannot be justified.

Respondent contends first that the relief asked for by relators is not a proper area for a writ of supervisory control. The order awarding "costs" is interlocutory in nature and does not present extraordinary or compelling circumstances beyond simply requiring relators to proceed to trial. The issue raised by relators can easily be raised on appeal after a trial has been had on the merits and a judgment rendered thereon.

Respondent further contends that authority to impose conditions on relators' request to amend their complaint is drawn from the language in Rule 15(a), M.R.Civ.P., which provides that ". . . a party may amend his pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Thus, the District Court is empowered to act as justice requires, to safeguard the parties from prejudice by imposing such terms as are just upon the party requesting the amendment. Here, defendants have been prejudiced to the extent of incurring substantial costs as a result of relators' desire to expand their complaint to include additional legal theories and relief, thereby justifying the imposition of terms.

Respondent raises a third issue on appeal: Did the relators waive any right to an evidentiary hearing on the award to be given, either by failing to make a timely request for such a hearing or by attempting to comply with the District Court's order? The issue, however, need not be discussed further in that relators have stated in their reply brief that they do not seek a hearing on the amount of the award to be granted under the court's order. The relators' sole contention is that no amount can be properly awarded under the circumstances, and, thus, a hearing is not required.

Proper judicial administration requires freedom of action by the District Court prior to trial and noninterference on our part at this stage of the proceeding. State ex rel. Kosena v. District Court (1977), 172 Mont. 21, 560 P.2d 522. The institution of an original proceeding in

this Court seeking a writ of supervisory control can be justified, however, when there is no direct appeal or other remedial procedure available to provide relief from the District Court's action and when extraordinary and compelling circumstances are presented. See Rule 17(a), M.R.App.Civ.P.

In this instance, no direct appeal is available from the order requiring relators to pay the award to defendants as a condition to allowing the amendment of their complaint. Furthermore, we find that extraordinary circumstances are present which require an inquiry into the District Court's proceedings prior to trial and final judgment. If we declined to review the matter at this stage, relators could be precluded from proceeding on all counts they deem necessary for appropriate relief, resulting in a possible improper denial of their right of access to the courts.

The major issue in this proceeding is whether the District Court was within its jurisdiction in imposing terms upon the allowance of relators' amended complaint. Rule 15(a), M.R.Civ.P., provides in part:

> ". . . Otherwise a party may amend his pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

Rule 15(a), M.R.Civ.P., as cited above, is identical to Rule 15(a) of the federal rules under which it is widely held that it is within a court's discretion to impose terms or conditions upon granting a motion for leave to amend. See Key Pharmaceuticals, Inc. v. Lowey (S.D. N.Y. 1972), 54 F.R.D. 447; Sherrell v. Mitchell Aero, Inc. (D. Wisc. 1971), 340 F.Supp. 219; Thermodynamics Corp. v. Union Carbide Corp.

(D. N.H. 1967), 42 F.R.D. 607; Jacobs v. McCloskey & Co. (E.D. Pa. 1966), 40 F.R.D. 486. Comments and reasons for upholding such an exercise of discretion is fully discussed in 6 Wright & Miller, Federal Practice and Procedure, Civil § 1486:

> "Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed. In addition, a number of courts have concluded that it gives them authority to impose conditions when permission to amend is allowed . . . The statement in Rule 15(a) that 'leave shall be freely given when justice so requires' presupposes that the court may use its discretion to impose conditions on the allowance of a proposed amendment as an appropriate means of balancing the interests of the party seeking the amendment and those of the party objecting to it. The imposition of terms often will further the rule's liberal amendment policy. If the party opposing the amendment can be protected by the use of conditions from any possible prejudice that might result from the untimeliness of the amendment, there is no justifiable reason for not allowing it."

See also 3 Moore's Federal Practice ¶15.08[6].

As a result of the District Court's discretion to impose terms, the question now becomes whether the court in this instance abused its discretion. In this regard, the most important factor, and perhaps the most frequent reason given for denying leave to amend, is that the opposing party will be prejudiced if the movant is permitted to alter his pleading. Mitchell v. Mitchell (1976), 169 Mont. 134, 545 P.2d 657. Other factors to be considered are the good faith of the party seeking the amendment, the reasons for the movant's delay, and the length of the delay. Mitchell v. Mitchell, supra; 6 Wright & Miller, Federal Practice and Procedure, Civil §§ 1487, 1488.

Here, the original complaint was filed on August 31,

1979. The complaint alleged that certain coal leases entered into by defendant State Board of Land Commissioners and the remaining defendants were voidable or void. The complaint was grounded on the theory that the Board, by entering into leases which provided for a royalty rate below full market value, was in violation of section 77-3-315, MCA, and, thus, was in breach of trust responsibilities owed to relators. Relators prayed that the District Court issue a declaratory judgment adjudicating the duty of the Board of Land Commissioners to obtain the full market value of the land and declaring the leases null and void for the Board's failure to abide by this duty.

Certain plaintiffs were dismissed from the proceedings and additional plaintiffs and defendants were joined by order of the court and stipulation of the parties in amended complaints filed on January 17, 1980 and March 20, 1980. No additional allegations or theories challenging the validity of the leases were included in these complaints. On June 18, 1980, relators filed their motion for leave to file the second amended complaint. This motion was made after all but four of the defendants had filed responsive pleadings to the allegations and grounds for relief set forth in the original and amended complaint.

The second amended complaint again alleged that the coal leases were void or voidable. Relators, however, in supporting the allegation expanded the theory of their case to include the following contentions not previously presented to the court:

(1) The Board, by entering into the leases, had acted in violation of Art. X, Section 11, 1972 Mont.Const.; of

section 81-501 through 81-551, R.C.M. 1947 (sections 77-3-301 through 77-3-321, MCA); section 81-103, R.C.M. 1947 (sections 77-1-202 and 77-1-203(1), MCA); section 77-1-102, MCA; and the laws of the State of Montana and the United States relating to the powers and obligations of trustees.

(2) The Board has violated its trust responsibilities in wasting the assets of the trust by removing the subject of the trust (coal deposits) from the competitive market, wherein a greater royalty rate could be obtained, for an unconscionable period of time.

(3) The Board has further violated its trust responsibilities by failing to effect a forfeiture of the leases on the basis that the defendant lessees have breached an implied covenant to develop, produce and market the coal. (Defendant lessees allegedly have yet to develop the land for coal production.)

(4) The Board, by granting a unilateral, preemptory right of termination to defendant lessees without receiving a similar right, has unreasonably relinquished control of trust assets without mutuality or consideration.

(5) The royalty rates in the lease do not represent full and fair market value as compared with other royalties on contiguous or similar land. The leases have thus reduced the full market value of the estate constituting a direct violation of the purpose of the trust to obtain the maximum benefit for its beneficiaries.

In addition to expanding the theory of their action, relators' second amended complaint also expanded the prayer for relief to include a request for a writ of mandamus

-12-

compelling the Board to void the leases and to make the land available for new and renegotiated leases.

Upon receiving the motion for leave to file this amended complaint, defendants objected and argued that, if leave was granted, it should be made conditional. Defendants' request was based on a contention that by allowing the amendment, they would be prejudiced to the extent of incurring substantial costs. The District Court agreed with defendants' position and imposed terms in granting relators' motion.

In their petition for a writ of supervisory control relators argue that since formal discovery proceedings had not been instituted (i.e., interrogatories served or depositions taken) and since the case had not been set for trial or briefing on the merits, there was no prejudice to defendants caused by filing the second amended complaint. The only retracing of effort required of defendants, maintains relators, would be to file amended answers.

We find that generally the District Court has the power to impose terms or conditions on leave to file an amended complaint. Relators argue, however, that the District Court erred in considering "attorney fees" as a component of the partial costs granted as a condition to their amendment. In support of the argument, relators rely upon the general rule adopted by this Court that in the absence of a contractual agreement or specific statutory authority, attorney fees are not recoverable. See Winer v. Jonal Corporation (1976), 169 Mont. 247, 545 P.2d 1094; Kintner v. Harr (1965), 146 Mont. 461, 408 P.2d 487.

Relators have properly set forth the general rule in

regard to an award of attorney fees. It should be noted, however, that the rule has been expanded to include allowing attorney fees in spite of the absence of any specific statute or contractual agreement, solely upon equitable grounds. See Means v. Montana Power Company (1981), ____ Mont. ____, 625 P.2d 32, 38 St.Rep. 351. It is upon this same inherent equitable power that other courts have allowed the imposition of an award of attorney fees as a condition to amendment. See Matlack, Inc. v. Hupp Corporation (E.D. Pa. 1972), 57 F.R.D. 151; Mirabella v. Banco Industrial de la Republica Argentina (1970), 34 App.Div.2d 630, 309 N.Y.S.2d 400; William v. Myer (1907), 150 Cal. 714, 89 P. 972.

If, under all of the circumstances of a case, justice would require the imposition of costs as a condition to allowing an amendment, equity can further, in extreme cases, allow, as an element of those costs, attorney fees. Prejudice to a party in this kind of case resulting from an amended complaint is not limited solely to general costs expended in undertaking additional preparation but obviously can include attorney fees expended in responding to issues or theories not previously asserted. This discretion by the court, however, should be carefully and sparingly used and the court should be careful that a spin-off does not develop which would or could deny the adverse party access to the court and a fair trial on the merits.

Relators' final argument is that the $150 award to each defendant is unsupported, unreasonable, and amounts to a clear abuse of discretion by the District Court.

Due to relators' failure to timely request a hearing

on the matter, the only evidence upon which the award could be based is contained in the affidavits submitted by the parties listing the costs incurred as a result of the amendment. The total costs listed in the affidavits (including attorney fees) ranged from $209.28 to $2,520. These claims represent expenditures made by the various law firms, which in some instances represent more than one defendant. It would appear that the claims have been inflated with inappropriate expenditures (i.e., expenses and fees for all services as to all pleadings to date, not just those expenses and fees related to the filing of the second amended complaint). This, however, does not invalidate the $150 assessment, at least mathematically.

As indicated herein, we affirm the District Court's authority to impose conditions on a request to amend pleadings, as or when justice requires. The imposition of such sanctions, however, requires a showing of extraordinary prejudice. We do not find sufficient strength in the record here to support this degree of prejudice; nor did all parties suffer the same kind or amount of prejudice. Therefore, the order imposing cash sanctions is vacated and set aside, without prejudice, so that the matter can be raised on an appeal, if appropriate.

_____
Justice

-15-

We concur:

_____

_____

_____

_____
Justices

_____
Honorable John M. McCarvel,
District Judge, sitting in
place of Mr. Chief Justice
Frank I. Haswell