No. 86-423

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

STATE OF MONTANA, DEPARTMENT OF
REVENUE,

           Plaintiff and Appellant,

   -vs-

KENNETH JOHN FRANK,

      Defendant and Respondent.

_____

APPEAL FROM: District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John D. Koch, Child Enforcement Program, Great Falls,
        Montana

    For Respondent:

        Randall O. Skorheim, Great Falls, Montana

_____

Submitted on Briefs: Dec. 18, 1986

Decided: April 2. 1987

APR 2 - 1987

Filed:

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case we uphold the determination of the District Court, Eighth Judicial District, Cascade County, that there was an accord and satisfaction of the claim of the Department of Revenue against Kenneth Frank for recoupment of monies paid by the State as Aid to Families of Dependent Children (AFDC).

We also pass upon the propriety of the procedures used by the Department in attempting recoupment where there exists a District Court order for child support arising out of a marital dissolution proceeding.

The marriage of Judith and Kenneth Frank was dissolved in 1979. The District Court decree awarded custody of the three minor children to Judith, and Kenneth was ordered to pay child support in the amount of $100 per month per child until the children reached majority. The children are not of the age of majority at the time of this appeal.

Three months after the dissolution, in November, 1979, Judith became a recipient of AFDC funds, and assigned her right of child support from Kenneth to the Department of Revenue.

On February 27, 1980, the Department issued a "Notice of Support Debt" for $374.[1] The notice, however, was not served

---

1     YOU ARE HEREBY notified that the Department of Revenue finds that you are in arrears $ __374.00__ in the child support which you were ordered to pay in Cause No. __BDR-79-653__ , entered in the __EIGHTH DISTRICT__ Court, __CASCADE__ County, State of __MONTANA__ . This Decree ordered you to pay __$300.00__ per ~~week~~/month/~~year~~ for the support of your minor children __Bobby, Jimmy__ and Lori Frank      .

on Kenneth until six weeks later, on April 8, 1980. Kenneth did not request a hearing on the support debt pursuant to the notice. On June 12, 1980, the Department filed in the District Court of Cascade County, its warrant of distraint for a debt of $1,340 and requested a writ of execution directed to the sheriff of Cascade County to attach any accounts in which Kenneth might possess an interest. The writ of execution was requested by the Department on April 21, 1981, and was returned without any funds being collected.

On May 31, 1983, the Department requested a further writ of execution, which, issued on June 9, 1983, was returned "no accounts." On June 8, 1983, the Department filed an "Amended Warrant for Distraint" against Kenneth for a claimed debt of $7,040. On June 27, 1984, the Department filed with the Clerk of the District Court its "Second Amended Warrant of Distraint" against Kenneth, claiming $14,240 of debt due.

Aside from the original communication to Kenneth from the Department specifying a $374 debt, no further "Notice of

---

You are required to pay the Department of Revenue this $374.00 arrearage debt within 20 days. You are also required to make current support payments each week/month to the Department of Revenue in the amount of $300.00 . Section 40-5-222, MCA. The Department of Revenue is subrogated to or assigned the right to collect the child support payments which you are obligated to pay.

You are further given notice that should you fail to respond to this order for payment within 20 days from the date you are served with this Notice, the State of Montana may subject your property to distraint, seizure, and sale. Any net proceeds will be applied to the satisfaction of your support debt.

THEREFORE, be advised that should you fail to pay your support debt within 20 days of receipt of this Notice or refusal of Notice, that distraint, seizure, and sale of your property will be lawful without further Notice.

DATED this 27th day of February , 19 80 .

Signed: /S/ Clarice Milligan

Title: Investigator

Support Debt" was served upon Kenneth with respect to the accruing support payments, and the Department further failed (with respect to each filing of distraint warrant) to give any notice to Kenneth of a right to a hearing on each warrant.

Other events occurred which affected Kenneth's ability to make child support payments. He was a painter and suffered an industrial accident in August, 1980, which left him totally disabled. He was unable to return to work until January, 1985. Until February, 1984, his only income was $219 per week from Workers' Compensation benefits. He entered into a lump sum settlement with the State Insurance Fund on his compensation claim. When Kenneth submitted his petition for lump sum settlement, he submitted an affidavit in which he indicated he believed $8,500 would be required to make up his child support arrearages. At the time, the Department had calculated his arrearages to be $7,040.

Another important event related to Judith. She remarried three times while a recipient of AFDC funds without notifying the agency of her marriages. Her failure to notify the Department is an apparent violation of § 53-4-237, MCA, which provides:

> . . . in the administration of this part the department may consider the income and resources of stepparents and other individuals who reside in the home as resources and income available to the household.

Moreover, Judith did not steadily receive AFDC funds. She was an AFDC recipient in November and December, 1979, and during the years 1980 and 1981. She did not receive any AFDC funds during 1982 and most of 1983. She received a $425

grant in December, 1983, and a $425 grant in January, 1984. Over the entire period, the Department retained its assigned interest in the support payments, and Kenneth's debt to the Department was calculated as accruing in periods when Judith was not receiving any AFDC funds.

A third important event was that in April, 1984, Kenneth petitioned for and was granted custody of the minor children. Because Judith moved to another state to prevent enforcement of the change of custody, Kenneth spent approximately $3,000 to have the children returned to his care.

In the fall of 1983, a Department investigator wrote Kenneth's attorney informing him that the arrearage had grown to $7,040 and indicated an interest in negotiating a settlement. In February, 1984, another Department investigator wrote Kenneth's attorney informing him that the debt had grown to $7,640. According to the Department's testimony, this letter indicated that there was a possibility that the debt amount might be discounted to encourage settlement. A month later, on March 24, 1984, Kenneth's attorney sent to the Department a check for $1,000 accompanied by a letter stating that the check was offered as a full and final compromise payment.[2] The Department cashed

---

2                          March 26, 1984
Lori Hoard Posey
Investigator
Department of Revenue
Legal Divison/Child Support Enforcement
503 First Avenue North, Suite 407
Great Falls, Montana  59401

Dear Ms. Posey:
            Re: Kenneth J. Frank -Back Child Support
    Enclosed please find a check made out to your office in
the sum of $1,000.00 as full and final compromise payment of
the above referenced debt. Negotiation of this check will

the check and did not communicate further with Kenneth until it began garnishing his wages in January, 1985. The Department never informed Kenneth, either formally or informally, that his letter offer of March 26, 1984 had been rejected.

Kenneth reentered the work force in January, 1985, as a painting supervisor. He had remarried and had custody of the three minor children of his previous marriage. He was earning $336 per week.

The Department, through its regional supervisor in Great Falls, served upon Kenneth's employer a notice of levy which commanded the employer to withhold from Kenneth's paycheck 50% of the net proceeds then and in the future.

On February 8, 1985, Kenneth, through his attorney, moved the District Court for relief from the warrants of distraint and for stay of enforcement. The District Court granted a temporary stay and set the matter down for hearing. The Department filed its motion to dissolve the temporary restraining order and further moved that Kenneth be required to furnish a bond. The motion to dissolve the temporary

---

represent your consent to this matter being fully compromised for this amount and for Mr. Frank's no longer owing you anything.

Be advised that, as you well know, Workers' Compensation benefits or the proceeds thereof, are not attachable. Mr. Frank hasn't worked for three and a half years and is still unemployed because of his injuries. This is why we feel that the $1,000.00 payment is the best that Mr. Frank can do and even that amount will work a hardship on him and his family.

If you have any questions, please feel free to contact me at your convenience. Again, negotiation of this check represents full and final compromise settlement of any claims you may have against Mr. Frank as of the date of this check.

Yours truly,
OVERFELT LAW FIRM

restraining order and to require a bond were denied. At a hearing held before the District Court on March 28, 1985, the motion for permanent injunction was taken under advisement and on July 30, 1986, the District Court issued its findings of fact, conclusions and the order which is the subject of this appeal.

The Department of Revenue urges five issues on appeal:

1. The District Court lost jurisdiction of the cause under Rule 60(c), M.R.Civ.P. when it issued its findings of fact, conclusions of law and order more than 45 days after the motion filed on February 8, 1985.

2. The District Court's determination that Kenneth should not receive due process was incorrect.

3. Neither the fraud of Judith nor the mistake of the Department eliminates Kenneth's obligation to make child support payments.

4. The court erred in determining that there had been an accord and satisfaction.

5. The court erred in determining that Kenneth was entitled to attorneys fees and costs.

JURISDICTION

The first issue relates to whether the District Court had jurisdiction under the time restraints of Rule 60(c), M.R.Civ.P. to set aside the judgment effect of the filing of a warrant of distraint. Rule 60(c), M.R.Civ.P. provides:

> Time for determining motions. Motions provided by subdivision (b) of this rule shall be determined within the times provided by Rule 59 in the case of motions for new trials and amendment of judgment and if the court shall fail to rule on the motion within the 45 day period, the motion shall be deemed denied.

The Department argues that the time elapsing between the date of the father's motion for relief from judgment,

February 8, 1985, and the hearing on the motion, March 28, 1985 was 48 days, and the order itself did not come down until July 30, 1986, and that thereby the District Court lost jurisdiction of the cause.

In cases for collections for delinquent taxes, or the recoupment of AFDC payments as here, where the collection is based upon warrants of distraint, a judgment as such is not actually entered by a District Court. Instead, the Department of Revenue files a warrant of distraint with the Clerk of the District Court, whose duty is then to file the warrant in the judgment docket with the name of the taxpayer or parent listed as the judgment debtor. Section 15-1-704, MCA. Upon the filing thereof, there is a lien against all real and personal property of the delinquent taxpayer or nonpaying parent in the county where the warrant is filed. Section 15-1-701(2), MCA. Thus, the filing of the warrant by the Department with the District Court has the same lien effect as a properly docketed judgment and the Department may collect delinquent taxes and enforce the tax lien or recoup AFDC funds in the same manner as a judgment is enforced. Section 15-1-701(2), MCA; § 40-5-241, MCA.

In this case, the effect of the motion of Kenneth for relief from judgment and a stay of enforcement is the same as the situation of a person seeking relief from a judgment of the District Court under Rule 60(b), M.R.Civ.P. It is, however, provided in Rule 60(b) that the rule

> . . . does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law . . .

The time limitations provided in Rule 60(c) must be read in light of the principle set out in Rule 60(b), which provides for such an independent action. The residual power

of the District Court therein preserved is a complete reservation of the District Court's independent power. Its purpose is to protect equity by "not enforcing a judgment obtained against the public conscience." Thomas v. Savage (1973), 161 Mont. 192, 505 P.2d 118, 120; Elliston Lime Company v. Prentice Lumber (1971), 157 Mont. 64, 483 P.2d 264. The residual power portion of Rule 60(b) was enacted particularly to prevent an injustice. For that reason, we hold that Kenneth's motion to set aside enforcement of an unserved warrant of distraint was an independent action, and thus is not subject to the 45 day time limitation of Rule 60(c), M.R.Civ.P.

DUE PROCESS

The District Court concluded that because the defendant had never been personally served with the amended warrants of distraint or afforded an opportunity for a hearing before their entry that his right to due process under both federal and state constitutions was violated.

The Department argues that there is no post-judgment right to notice of hearing before levy of execution, relying on Endicott-Johnson Corporation v. Encyclopedia Press (1924), 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed.2d 288. It argues that under Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, which concerns administrative procedures, there must be a balance of governmental and private interests to determine whether they are constitutionally sufficient for due process. The Department contends that because it made AFDC payments, it was automatically subrogated to the wife's right to press for collection of her dissolution decree judgment under § 40-5-222, MCA. It further contends that the notice served on Kenneth on April 8, 1980, is a sufficient notice of the assignment and all accruing support payments thereafter due under the District Court order in the

- 9 -

dissolution proceedings. The Department also points to the case of Duranceau v. Wallace (9th Cir. 1984), 743 F.2d 709, holding that the State of Washington's administrative procedures for collecting past due child support did not violate the due process clause of the United States Constitution.

Montana participates in the use of federal grants and other sources to make AFDC payments. The program in our statutes for the recoupment of AFDC funds from parents who in dissolution proceedings or other custody matters have been ordered to make child support payments grows out of the necessity to comply with the federal programs. Thus, under federal law, an applicant for AFDC funds must assign all rights to accrued support at the time of payment to the state agency. 42-602(26)(A) U.S.C. The assignment by the recipient to the state allows the state to make collections which are on behalf of the state and the federal government. 42-654(5) U.S.C. The amounts collected thereby are distributed to the state and federal agencies until the AFDC funds and other costs are recovered, the balance to be distributed under certain rules to the family. 42-657(b) U.S.C.

The state has two avenues under its state statutes, to gain recoupment of AFDC payments. If there has been no District Court order, the Department can proceed under § 40-5-223, MCA, to serve a notice of liability and undertake subsequent recoupment proceedings. If there is a district court order, as in this case, the Department proceeds under § 40-5-222, MCA. Under that statute, the Department is empowered to send out a "notice of debt" which includes a statement of the support debt accrued or accruing, and which informs the delinquent parent that he is entitled to a fair hearing. In this case such a notice of debt was sent out and

Kenneth did not request any further hearing. When 31 days have elapsed after service of the notice of debt, the Department may issue a warrant for distraint based on the amount of the support debt. Section 40-5-241, MCA. Such a warrant, however, is subject to the provisions of §§ 15-1-701, 15-1-704, 15-1-708, and 15-1-709, MCA. Section 40-5-241, supra.

The sections which appear in Title 15, referred to in § 40-5-241, relate to the collection of delinquent tax payments, which is also a function of the Department of Revenue. It is § 15-1-701 which provides that a distraint warrant, upon filing with the County Clerk and Recorder, becomes a lien against real and personal property of the delinquent parent. It appears strange that § 40-5-241, MCA, in incorporating for delinquent support payments the procedures used to collect delinquent taxes, did not include § 15-1-705, MCA. That section provides that the judgment debtor after the filing of a distraint warrant is entitled to a hearing. It states:

> The Department must provide notice of the right to hearing to the taxpayer. A request for hearing must be made in writing within 30 days of the date of the notice. This notice may be given prior to the notice referred to in 15-1-702 . . .

In recoupment cases, the judgment that is obtained by the Department through the filing of a distraint warrant with the Clerk of the District Court is to be distinguished from a judgment that is lodged and entered through an order of the District Court. In the case of a judgment issued by a district court, there is provision made for notice of entry of judgment, although it is true that execution may occur before the notice of entry of judgment has been served. However, a judgment entered by a district court occurs presumably after a full opportunity (unless the judgment

- 11 -

debtor has defaulted) for notice and hearing on the claim which results in the judgment. In the case of a warrant of distraint for recoupment, no such opportunity is afforded the alleged delinquent parent. This case illustrates the necessity of notice of hearing upon the filing of the distraint warrant to the parent who thereby becomes a judgment debtor. If § 15-1-705, MCA, had also been made part of the procedure for recoupment under 40-5-241, Kenneth would have been notified with the filing of each distraint warrant and given an opportunity to present the arguments that are now presented as to why he should not be held liable for those payments. Because Kenneth was never given notice of the filing of the distraint warrants against him in the office of the Clerk of the District Court, and was not given any further notice of accruing debt after the first notice had been served upon him, we hold that Kenneth was deprived of notice and opportunity for hearing which would have accorded him due process. We uphold the District Court in its conclusion.

ACCORD AND SATISFACTION

We skip to the next issue of accord and satisfaction, because it is determinative in this case. The Department contends that the District Court was in error in finding that the debt owing to the State for AFDC payments was fully and finally satisfied by accord and satisfaction. The Department argues that the debt was liquidated and accordingly satisfaction was impossible without the Department's written acceptance. Section 28-1-1403, MCA. Because of its claim that the indebtedness owed by Kenneth is liquidated, the Department relies on Sawyer v. Sommers Lumber Co. (1929), 86 Mont. 169, 282 P. 852. The statement in Sawyer is, of course, illuminating:

An accord and satisfaction is founded upon contract, and a consideration therefor is necessary. By the great weight of authority, if the indebtedness is unliquidated or in dispute, payment by the debtor of an amount less than claimed by the creditor, and the receipt by the latter of such amount under such circumstances that he is bound to know that the intention was to make the payment in full settlement of the claim, will discharge the whole claim, and the creditor may not thereafter maintain an action to collect additional sums. Under these circumstances there is an agreement to compromise the differences between the parties, and, there being a dispute, a consideration for the agreement exists. (Citing authority.)

If plaintiff's claim was unliquidated, his acceptance of the check under the circumstances disclosed by the record constituted an accord and satisfaction. If the claim was liquidated, it could be discharged only by payment in full or by payment of a lesser amount and acceptance thereof in writing. (Citing authority.) There was not an acceptance in writing. The indorsement of the check by plaintiff for the purpose of cashing it is not such a writing as is contemplated by [quoting a statute] and it follows that the only question for determination is: Was the claim liquidated or unliquidated?

A claim is liquidated when the amount due is fixed by law or has been ascertained and agreed upon by the parties. (Citing authority.) . . .

86 Mont. at 177, 282 P. at 854.

The letter of March 26, 1984, sent by Kenneth's attorney to the Department clearly indicated that the $1,000 was offered as full settlement. It pointed out that the lump sum settlement which Kenneth had received for his compensation claim was not attachable, and the letter was notice given separately from the check itself that negotiation of the check would represent consent to a full compromise of the Department's claim against Kenneth. There was more here to

- 13 -

the cashing of the check than the mere endorsement by the Department. The separate letter was notice that negotiation and acceptance of the check constituted an accord and satisfaction. Further, although Kenneth's support payments were set by a decree of the District Court, and in effect were thereby made certain, the question of the right to recoupment in this case is not certain. Kenneth would surely not be liable to the Department if Judith had obtained payments through fraud and it is very uncertain that Judith could have enforced the support judgment. A subrogee, if the Department is a subrogee, stands in the shoes of the subrogor.

We determine and agree with the District Court that the Department's claim against Kenneth was a disputed and unliquidated claim and acceptance by the Department of the check, which was accompanied by the letter of March 26, 1984, does in fact create an accord and satisfaction.

ATTORNEY FEES

The District Court has ordered that Kenneth receive his attorney fees and costs, although the amount of attorney fees has not yet been decided by the District Court. The Department appeals from the award of attorney fees, contending that no statute authorizes awarding attorney fees to the prevailing party in a Rule 60(b) motion, that no contract exists between the parties under which the reciprocal payment of attorney fees would be allowed, and because no statutory or contractual authority exists, the award of attorney fees should be reversed. State ex rel. Foss v. District Court (Mont. 1985), 701 P.2d 342, 42 St.Rep. 845; In Re Marriage of Canon (Mont. 1985), 697 P.2d 901, 42 St.Rep. 348.

Under § 25-10-711, MCA, an award of costs, including attorney fees, may be granted against a governmental entity

if the person prevails against the governmental entity and the court finds the claim or defense of the governmental entity frivolous or pursued in bad faith. The court order stated:

> 4. That, because of the foregoing accord and satisfaction, the defendant is awarded costs and attorney fees . . .

The award of the attorney fees by the District Court implies that the court found that the state acted in bad faith in this matter. After receiving the check and cashing the same in an accord and satisfaction, the Department, about one year later, levied execution upon the wages of Kenneth from his newly-found job. Moreover, although under the restraining order of the court, the Department was to hold in abeyance any attempts at collection or enforcement of the distraint warrant, the Department received, from the Internal Revenue Service as a result of action taken by the Department prior to the entry of the stay order, $1,593.38 representing Kenneth's 1985 income tax refund. Moreover, the Department received his state income tax refund of $401.50. The Department moved the District Court for an order to pay the monies into court, which was granted. As of the date of the Department's brief, a total of $3,598.31 has been paid into court under the Department's motion to prevent the funds from falling into Kenneth's hands.

In State ex rel. Florence Carlton Consolidated Schools District v. District Court (Mont. 1981), 632 P.2d 318, 38 St.Rep. 1204, we stated that if under all the circumstances of a case, justice would require the imposition of costs, equity can further provide in extreme cases, to allow attorney fees as an element of those costs. We have here a case where the Department has lodged judgments against Kenneth, which constitute liens on his real and personal

property. They have garnished his wages and intercepted his federal and state income tax refunds. The levy of execution applied not only to his accrued wages, at the time of the levy, but to any future wages he might receive (a point not raised by Kenneth but open to question; ordinarily an execution cannot reach future credits, but only accrued credits). He has further been forced to this appeal and the delay thereby engendered. In all the circumstances, it appears that the District Court was correct and that equity demands that Kenneth be awarded attorney fees both for the proceedings in District Court and for this appeal. Such an award is within the sound discretion of the trial court. Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 605 P.2d 1107; Foy v. Anderson (1978), 176 Mont. 507, 580 P.2d 114.

We need not consider the further issue raised by the Department relating to whether Judith acted fraudulently or the Department made a mistake. That issue has no bearing on the outcome of this appeal.

Accordingly, we affirm the District Court and remand this cause for the determination of costs and attorney fees in accordance with this Opinion. See Rule 33, M.R.App.Civ.P., for the collection of costs on appeal.

_____
                    Justice

We Concur:

_____
    Chief Justice

_____

_____
    Justices

Mr. Justice Fred J. Weber specially concurs as follows:

I agree with the conclusion of the majority opinion that the issue of accord and satisfaction is determinative in this case. I further agree with the determination of the majority opinion that the claim was a disputed and unliquidated claim and that acceptance by the department of the check created an accord and satisfaction. In addition I concur with the affirmation by the majority of the attorney's fee determination by the District Court. As a result, I concur in the majority opinion.

I do not join in the majority conclusion that the motion to set aside enforcement was an independent action and not subject to the limitations of Rule 60(c) M.R.Civ.P. In particular, I do not agree with the majority conclusion that the absence of personal service of the amended warrants of distraint constituted a violation of the defendant's rights to due process.

_____
Justice

Mr. Justice L. C. Gulbrandson concurs in the foregoing special concurrence.

_____
Justice