No. 89-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN THE MATTER OF THE ADJUDICATION
OF THE EXISTING RIGHTS TO THE USE
OF ALL THE WATER, BOTH SURFACE AND
UNDERGROUND, WITHIN THE DEARBORN
DRAINAGE AREA, INCLUDING ALL
TRIBUTARIES OF THE DEARBORN RIVER
IN CASCADE AND LEWIS AND CLARK
COUNTIES, MONTANA,

DEPARTMENT OF FISH, WILDLIFE AND PARKS,
                         Claimant and Appellant,

    -vs-

MONTANA STOCKGROWERS ASOCIATION, INC.,
                         Respondent and Respondent.


APPEAL FROM:   Montana Water Courts
               The Honorable Roy C. Rodeghiero, Judge Presiding

COUNSEL OF RECORD:
       For Appellant:

           Robert N. Lane, Chief Legal Counsel, Department
           of Fish, Wildlife & Parks, Helena, Montana

       For Respondent:

           Perry T. Moore, Moore, O'Connell, Refling & Moon, P.C.
           Bozeman, Montana


                              Submitted: October 4, 1989
                                Decided: November 21, 1989

Filed:

_____
                      Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a judgment of the Water Court, Upper Missouri Division, finding the appellant, the Montana Department of Fish, Wildlife and Parks (Department), liable for attorneys' fees and costs incurred by the Montana Stockgrowers Association, Inc. (Stockgrowers). We reverse.

The sole issue on appeal is:

Whether the Water Court erred in awarding attorneys' fees and costs to the Stockgrowers, who prevailed against the Department in a case involving the public's recreational use rights of the waters in Bean Lake.

This issue arose out of this Court's decision in the Bean Lake case. Matter of Dearborn Drainage Area (Mont. 1988), 766 P.2d 228, 45 St.Rep. 1948. In Bean Lake, the Department pursued a water right claim, for the waters of Bean Lake as part of the ongoing statewide adjudication of water rights under the Montana Water Use Act. See §§ 85-2-201, MCA et seq. The Stockgrowers intervened in response to statewide notice by publication and opposed the Department's claim. Legal counsel for the Stockgrowers, was appointed lead counsel for all intervenors opposing the claim.

The Water Court ruled, and we affirmed, the Department had no appropriation right in Bean Lake predating 1973, because before that time no such right was recognized for recreation, fish and wildlife. Before 1973, some form of diversion was necessary for an appropriation. Because the right asserted by the Department lacked the elements of "diversion, intent, and notice," we held that the Department, for itself or for the public, had no valid water right which predated the 1973 Water Use Act.

2

Then after remittitur the Stockgrowers filed a motion for attorneys' fees. A hearing was held, and the Water Court ruled that the Stockgrowers were entitled to attorneys' fees and costs. The court arrived at this conclusion although it specifically found that the Department acted in good faith within its statutory obligation to represent the public's recreational interest. It based its conclusion on the fact that the case was of precedent setting nature. Because the outcome was significant to all water users in the state, the court ruled that the Stockgrowers assumed "a burden which was disproportionate to its interest in Bean Lake." It held the case presented unique circumstances which warranted an assessment of costs and attorneys' fees.

The Department's position is that when attorneys' fees and costs are to be assessed against agencies of the state, one must determine whether they are warranted under § 25-10-711, MCA. This statute, it is maintained, sets out the specific test that must be met before costs, as enumerated in § 25-10-201, MCA, and attorneys' fees, can be assessed. In short, it requires that such award is only proper when a private party prevails against the state agency and the claim or defense asserted by the agency was frivolous or pursued in bad faith. Section 25-10-711, MCA.

The Department takes the view that this statute sets out the sole means by which attorneys' fees can be granted. They argue that the judgment rendered by the Water Court is in error because it specifically found the claim was asserted in good faith and in accordance with the statutory mandate of § 85-2-223, MCA. This statute directs the Department to represent the public in claiming water for recreational use. The Department asserts that a failure on its part to make the claims on Bean Lake would have been tantamount to a dereliction of duty on its part. Therefore, because the

3

claim was asserted in good faith, the assessment of fees and costs was in error.

The Water Court did not rely upon § 25-10-711, MCA, to arrive at its conclusion. It held that due to the constitutional and economic significance of this case, the State should bear all of the costs. It reasoned that in order to ensure full presentation of all public interests affected by its decision, it was necessary to provide funding to private organizations, such as the Stockgrowers. If this funding is not provided, certain viewpoints may not be presented, and, as a result the overall integrity and effectiveness of the adjudication process may be diminished.

The Water Court's ruling does not comply with the general rules set out by this Court regarding attorneys' fees. We have held that Montana adheres to the "American Rule" regarding attorneys' fees. Under the American Rule, a party in a civil action is generally not entitled to fees absent a specific contractual or statutory provision. In Re Marriage of Hereford (1986), 223 Mont. 31, 723 P.2d 960.

It is true that we have departed from this rule when certain extraordinary and compelling circumstances have been presented. For instance, in Cate v. Hargrave (1984), 209 Mont. 265, 680 P.2d 952, we held that under the inherent equitable powers held by the judiciary, a District Court can assess attorneys' fees in cases of bad faith. But we disagree with the Water Court that the circumstances of this case provide a basis for the assessment of fees.

The Stockgrowers is a private organization that represents approximately 3,000 farmers and ranchers across the State. Many of its members hold a right to use the waters which are owned by the State. The Stockgrowers, like many other organizations, have a distinct economic and philosophical interest in the uses and adjudication of the

4

waters within the State. They represent primarily a private agricultural interest.

The Department, on the other hand, has been charged by § 85-2-223, MCA, with the duty of representing the public interests in regard to recreational use of Montana waters. The duty conferred by this statute is concomitant with Article IX, Section 3, Part 3 of the Montana Constitution which states:

> All . . . waters within the boundaries of the state are the property of the state for use of its people . . .

This provision sets forth the fact that the waters of the State belong to the State for use by all of its citizens. However, as this case demonstrates, these uses often conflict, and competing interests often disagree over how this resource should be allocated.

The premise of the Montana Water Use Act anticipates these disagreements, and the integrity of Montana's adjudication process depends upon the assertion and ultimate resolution of these varying interests. The provisions of the Act charge all water users with the duty of asserting and defending their interests. The Stockgrowers has taken upon itself the duty of defending a private agricultural interest. The Department, on the other hand, has been directed to enhance and protect the State's resources under its charge. It therefore claims waters necessary to ensure the well being of fish, wildlife and scenic values in order to fulfill this mandate.

Viewed in this context, the dispute at Bean Lake, is really no more than an ordinary water rights dispute which was envisioned, by the legislature in the passage of the Montana Water Use Act. The legislature in the passage of the

5

Act determined that the adjudication process would be adversarial in nature. It did not, however, determine that the prevailing parties in these disputes would be entitled to attorneys' fees.

Many water rights disputes have the potential of affecting a number of water users. A case determining a question of abandonment, for example, could have far reaching effect on other water users. However, this Court declines to award attorneys' fees and costs for the sole reason that a case is of precedent setting nature. We agree with the rationale of the California Supreme Court in Woodland Hills v. City Council of Los Angeles (Cal. 1979), 593 P.2d 200:

> . . . the doctrine of stare decisis has never been viewed as sufficient justification for permitting an attorney to obtain fees from all those who may, in future cases, utilize a precedence he has helped to secure. Woodland Hills, 593 P.2d at 216.

The Stockgrowers urge the Court to recognize and apply the Private Attorney General Doctrine to the facts of this case. The Water Court did not utilize this doctrine in arriving at its conclusion. However, we will point out that the Doctrine should not apply to the facts of this case. The Doctrine is normally utilized when the government, for some reason, fails to properly enforce interests which are significant to its citizens. In this case, the Department complied with its mandate and represented a public's interest as defined by § 85-2-223, MCA, in making the in-lake claims at Bean Lake. There was no failure on its part to comply with its duties.

We reiterate the point that the Department acted in good faith and in accordance with constitutional and statutory mandates in making its claims at Bean Lake. We therefore

6

hold that the award was in error and the judgment awarding fees is reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

7