No. 90-611

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STEPHEN P. WEBER,

Plaintiff and Appellant,

-vs-

STATE OF MONTANA,

Defendant, Respondent and Cross-Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Erik B. Thueson; Thueson Law Office, Helena, Montana

For Respondent:

Maxon R. Davis; Cure, Borer & Davis, Great Falls,
Montana
Bill Gianoulias, Tort Claims Division, Helena,
Montana

FILED

MAY 5 - 1992

Filed:
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: February 13, 1992

Decided: May 5, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Stephen P. Weber, brought a wrongful discharge action against the State of Montana before the First Judicial District Court, Lewis and Clark County, Montana. A jury found in favor of Mr. Weber and awarded him $33,230 in damages. Mr. Weber appeals. The State of Montana cross-appeals. We affirm.

The issues raised for review by the parties are restated as follows:

1. Did the District Court abuse its discretion in admitting certain evidence at trial?

2. Did the District Court incorrectly instruct the jury that damages under § 39-2-905(1), MCA, are discretionary?

3. Should the District Court award Mr. Weber costs and attorney fees?

4. Was the jury's verdict in favor of Mr. Weber supported by substantial evidence?

In September 1988, Mr. Weber resigned from his position as assistant manager of the Tort Claims Division for the State of Montana. At the time of his resignation, Mr. Weber had been employed by the State for 16 years and was earning approximately $30,000 per year. In September 1989, he brought this wrongful discharge action contending he was constructively discharged by intolerable working conditions created by his superiors. Mr. Weber claims he was harassed, treated unfairly and finally demoted for his actions involving a fraudulent claim submitted to his department by the Department of Administration's Publications and

Graphics Division (P & G).

Evidence presented by Mr. Weber indicated that in August 1986, he received a property damage claim for $111,000 from Gary Wolf, administrator of P & G. Mr. Weber presented extensive testimony that this claim submitted by P & G was inflated. In fact, Weber assessed the property damage at under $6,000. Further, evidence indicated that contrary to §2-17-105, MCA, P & G was using the insurance proceeds to purchase office furniture and equipment instead of replacing the property allegedly destroyed by the flood. As a result, Mr. Weber testified that he refused to pay P & G's claims.

In November 1986, Mr. Wolf and P & G bureau chief, Don Brieby, met with Mr. Weber's superior, John Maynard (Maynard), regarding Mr. Weber's refusal to pay the claim. In response to this meeting, Mr. Weber testified that his superiors ordered him to pay the claims submitted by P & G.

Subsequently, Mr. Weber informed the legislative auditor of the exorbitant claim. The auditor determined P & G improperly purchased office equipment and furniture with the insurance proceeds; however, the auditor did not investigate Mr. Weber's complaint regarding the inflated claim until after this trial.

After the P & G claim controversy, Mr. Weber testified that working conditions became "strained." Mr. Weber testified his superiors began accusing him of making mistakes on office matters in which he had no involvement. Mr. Weber further testified they treated him like he did not exist, would not speak to him and made

him feel unimportant. Finally, in June 1988, Mr. Maynard informed Mr. Weber that as a result of reclassification, his position would most likely be downgraded. In September 1988, after receiving the news that he would be demoted immediately, Mr. Weber tendered his resignation.

This case was submitted to a jury. Mr. Weber claimed the State, through its supervising personnel, constructively discharged him from employment by causing him to leave his job. The State denied that Mr. Weber was forced to leave his job. In the alternative, the State claimed that even if Mr. Weber was wrongfully discharged, he did not take reasonable steps to minimize his damages. The jury rendered a verdict in favor of Mr. Weber for $33,230. As a result, Mr. Weber submitted post-trial motions requesting a new trial on the issue of damages, and an award of attorney fees and costs from the court. The District Court denied both motions. From this order Mr. Weber appeals. The State cross-appeals, claiming the jury verdict was not supported by substantial evidence.

The appellant in this action is not related to the author of this opinion.

I

Did the District Court abuse its discretion in admitting certain evidence at trial?

Admitting or refusing evidence is within the discretion of the trial court. Morning Star Enterprises, Inc. v. R.H. Grover, Inc. (1991), 247 Mont. 105, 110, 805 P.2d 553, 556. Thus, in order to

4

overturn an evidentiary ruling Mr. Weber must show an abuse of discretion.

Mr. Weber claims the District Court abused its discretion by admitting four specific segments of testimony and one exhibit. These include: Mr. Maynard's job performance appraisal and certain testimony regarding Mr. Weber's job performance; prejudicial testimony raising the inference that Mr. Weber's claim was frivolous; and testimony appealing to the self-interest of the jurors as taxpayers.

Mr. Weber objects to derogatory statements and exhibits involving his job performance. First he claims that this evidence was irrelevant where the State never placed his job performance at issue in their answer or the pretrial brief. We disagree. Mr. Weber introduced evidence of his diligent work habits during the trial. Thus, we conclude the District Court did not abuse its discretion in allowing the State to submit evidence for the purpose of rebutting that testimony.

Next, Mr. Weber claims the derogatory testimony regarding his job performance is improper character evidence under Rule 404, M.R.Evid. We disagree. The evidence regarding Mr. Weber's job performance is not character evidence excluded by Rule 404, M.R.Evid. We conclude it is admissible evidence of the plaintiff's conduct.

Further, Mr. Weber claims the testimony and evidence regarding his job performance was self serving, remote, opinion testimony of a lay witness, and a prior consistent statement disallowed under

Rule 801(d)(1), M.R.Evid. Again, Mr. Weber has failed persuade this Court that the District Court abused its discretion by admitting this evidence. We conclude the District Court did not abuse its discretion in allowing testimony and a job performance appraisal which criticized Mr. Weber's job performance.

Next, Mr. Weber contends the court abused its discretion in admitting testimony from the director of the Department of Administration, and Mr. Maynard, administrator of the Tort Claims Division. Mr. Weber contends this testimony led to the inference that his claim was frivolous and incorrectly appealed to the self-interest of the jurors as taxpayers. After reviewing the record, we conclude Mr. Weber has incorrectly described the testimony, and has failed to demonstrate the lower court abused its discretion in admitting the testimony.

We hold the District Court did not abuse its discretion in admitting certain evidence and properly denied plaintiff's motion for a new trial on this issue.

## II

Did the District Court incorrectly instruct the jury that damages under § 39-2-905(1), MCA, are discretionary?

Mr. Weber objects to the District Court's Jury Instruction No. 17 which reiterated the language in § 39-2-905(1), MCA, instructing that:

> If an employer has committed a wrongful discharge, the employee may be awarded lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge, together with interest thereon. Interim earnings, including amounts the employee could have earned with reasonable diligence, must be deducted from

6

the amount awarded for lost wages.   (Emphasis added.)

Mr. Weber contends that damages under § 39-2-905(1), MCA, are mandatory and that he is entitled to four years compensation including benefits and interest.   He argues that under Bascom v. Carpenter (1952), 126 Mont. 129, 136, 246 P.2d 223, 226, and Lambe v. Missoula Imports (1988), 230 Mont. 183, 187-188, 748 P.2d 965, 968, the damages of § 39-2-905(1), MCA, are mandatory.   We disagree.   Both Bascom and Lambe are inapposite this decision.   In Bascom this Court required the lower court to provide notice to a natural parent prior to the termination of their parental rights, despite discretionary language in the statute.   We conclude there is no merit to Mr. Weber's contention that he is similarly situated to the father in Bascom who lost his parental rights without notice.   Next, Lambe interpreted a workers' compensation statute which provided that the court "may" award attorney fees to successful claimants in workers' compensation actions.   In view of the statutory differences between the Workers' Compensation Act and the Wrongful Discharge From Employment Act; Lambe is not controlling authority for a claim under the Wrongful Discharge Act.   We conclude § 39-2-905(1), MCA, places the discretion in the trier of fact to determine the amount of lost wages and benefits not to exceed four years from date of discharge.

Mr. Weber next argues that the jury's award of damages is not supported by the evidence.   We will not reweigh the evidence presented by the parties, or disturb a jury verdict which is supported by substantial evidence.   Sizemore v. Montana Power Co.

7

(1990), 246 Mont. 37, 48, 803 P.2d 629, 636. Mr. Weber has failed to demonstrate that the award of $33,230 is not supported by the evidence. We conclude there is substantial evidence to support the verdict.

We hold that the amount of damages recoverable under § 39-2-905(1), MCA, is discretionary; and that the District Court correctly instructed the jury on the measure of such damages. The District Court properly denied plaintiff's motion for a new trial on this issue.

### III

Should the District Court award Mr. Weber costs and attorney fees?

First, Mr. Weber claims he is entitled to attorney fees and costs under State v. Frank (1987), 226 Mont. 283, 735 P.2d 290. This Court held that in extreme cases, if justice and equity required, the District Court had the discretion to award costs and attorney fees. Frank, 226 Mont. at 293, 735 P.2d at 297. In Frank, the District Court order the Department of Revenue to pay costs and attorney fees when the Department executed upon Mr. Frank's wages in violation of a prior agreement. Mr. Frank was forced to file an action in district court to set aside the Department's improper levy of execution.

In this case, Mr. Weber failed to convince the trial court that the State's conduct was so extreme as to entitle him to costs and attorney fees. Further, he has failed to provide evidence that the District Court abused its discretion in reaching that

8

determination. Thus, we conclude the District Court did not abuse its discretion in determining that equity and justice did not require the award of costs and attorney fees in this action.

Next, Mr. Weber points to the private attorney general exception which allows the prevailing party to receive an award of costs and attorney fees when the government fails to enforce interests significant to its citizens. Matter of Dearborn Drainage Area (1989), 240 Mont. 39, 43, 782 P.2d 898, 900.

Here, Mr. Weber focuses upon the egregious conduct surrounding the inflated P & G claim, rather than focusing upon the conduct which led to his wrongful termination. While we do not wish to indicate any approval of conduct on the part of P & G, which may be classed as fraudulent, the present action was brought to recover losses for Mr. Weber's wrongful discharge, and not as a vehicle to reimburse the State for fraudulent claims. We conclude the private attorney general theory is not applicable to this action.

Finally, Mr. Weber contends he should receive attorney fees and costs under § 25-10-711, MCA, which provides in part:

> (1) In any civil action brought . . . against the state . . . the opposing party . . . is entitled to the costs . . . and reasonable attorney's fees as determined by the court if:
> (a) he prevails against the state . . . ; and
> (b) the court finds that the . . . defense of the state . . . was frivolous or pursued in bad faith.

It is clear Mr. Weber did prevail against the State. Next, we must determine if the District Court was clearly erroneous when it concluded that the defense of the State was neither frivolous nor pursued in bad faith. Rule 52(a) M.R.Civ.P.

9

Mr. Weber contends the State's defense was frivolous and pursued in bad faith where the State maintained the legitimacy of P & G's insurance claim during the trial; represented that government's improprieties were harmless; and attacked Mr. Weber's job performance.

The plaintiff again misses the mark by emphasizing the propriety of the P & G claim, instead of analyzing the State's defense. Although, Gary Wolf's testimony rebutted the plaintiff's evidence that P & G submitted an inflated claim, the State steadfastly denied that the inflated claim was connected to the interaction between Mr. Weber and his superiors or his position downgrade which ultimately led to Mr. Weber's constructive discharge. In addressing Mr. Weber's concerns regarding the legitimacy of the P & G claim, the District Court found:

> ... there was absolutely no evidence that any of Plaintiff's supervisors knew of the fraud aspects of the flood claim until after Plaintiff had quit his job and after he had filed his lawsuit. Initially, Plaintiff's reluctance to pay the flood claim came on his interpretation of a statute. He felt that the statute would not authorize purchase of equipment not like that destroyed by the flood. It was only during discovery in 1990 that it came to light that perhaps someone over at publications and graphics had inflated the claim . . . there is absolutely no evidence that the people who were responsible for Plaintiff's termination had any inkling of these apparently unethical activities."

Next, the plaintiff contends the State defended in bad faith by representing that the inflated claim was harmless. Mr. Weber mischaracterizes the State's defense. The District Court found:

> . . . the State did not want to talk about the flood case at all and presented a motion in limine to exclude any evidence in that regard. It was the Plaintiff that brought up the flood time and time and time again, making

10

it the central issue in their case."

The record supports the conclusion of the District Court.

We have previously upheld the relevance of Mr. Weber's job performance where he had placed his performance at issue in this action.

The District Court pointed out that Mr. Weber originally valued his case at $500,000 in June 1989, and later offered to settle for $170,000 in January 1990. Following trial in this case, the jury evaluated Mr. Weber's claim at $33,230. As pointed out by the District Court, these figures demonstrate that the State's defense was not frivolous.

The District Court properly considered the issues raised by Mr. Weber. We conclude that the District Court was not clearly erroneous in determining that the State defended in good faith.

We conclude the District Court properly addressed the issues raised by the plaintiff, and did not err in denying Mr. Weber an award of costs and attorney fees.

IV

Was the jury's verdict in favor of Mr. Weber supported by substantial evidence?

This Court takes a very limited role in reviewing jury verdicts. As previously stated, we do not retry the issues on appeal, but review the evidence in the light most favorable to the prevailing party and then determine whether substantial evidence supports the jury verdict. Sizemore, 246 Mont. at 48, 803 P.2d at 636. The State contends the evidence presented does not support

11

the jury's finding of wrongful discharge.  We disagree.  In reviewing the evidence in the light most favorable to Mr. Weber, we hold substantial evidence supports the jury verdict.

Affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice William E. Hunt, Sr., dissenting.

I dissent. I would reverse and remand this case for a new trial on the question of damages, based on the jury instruction given by the District Court regarding damages. The instruction was based on § 39-2-905, MCA, which provides in part that:

(1) If an employer has committed a wrongful discharge, the employee may be awarded lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge, together with interest thereon. Interim earnings, including amounts the employee could have earned with reasonable diligence, must be deducted from the amount awarded for lost wages.

This Court has developed a rule for construing statutes such as the one in question here. We have repeatedly stated that:

It is a general principle in statutory construction that, where the word "may" is used in conferring power upon an officer, court, or tribunal, and the public or a third person has an interest in the exercise of power, then the exercise of the power becomes imperative. (Citations omitted.)

Lamb v. Missoula Imports (1988), 230 Mont. 183, 188, 748 P.2d 965, 968 (quoting Adoption of Bascon (1952), 126 Mont. 129, 136, 246 P.2d 223, 226).

The instruction directing the jury that the "employee may be awarded" the specified damages was misleading and incorrect. The jury, in its discretion, must determine whether there has been a wrongful discharge. If the jury determines there has been a wrongful discharge, the jury must then determine the damages according to § 39-2-905, MCA. In determining the amount of damages in these cases, the jury has some discretion, especially concerning

12

the question of amounts the employee could have earned with reasonable diligence after the wrongful discharge from employment. However, once the jury is satisfied that damages in a certain amount have been proven, an award in that amount is mandatory. In the present case, the instruction given the jury concerning damages may be fairly interpreted as an instruction to the jury that they had the discretion to award or withhold damages, even if they were proven.

The jury found that appellant had been wrongfully discharged from his employment. There is no way of determining how the damages in this case were calculated, but judging from the award of damages, it is entirely possible the jury believed that it was within their discretion to award or withhold damages even if they were proven.

Additionally, appellant is entitled to attorney fees at the District Court level and on appeal under the private attorney general doctrine. The private attorney general doctrine is "utilized when the government, for some reason, fails to properly enforce interests which are significant to its citizens" and a private citizen is forced to bring suit to enforce these interests and prevails. Matter of Dearborn Drainage Area (1989), 240 Mont. 39, 43, 782 P.2d 898, 900. The fact that the appellant stood to gain personally from the litigation does not diminish the benefits received by the public. In this case, the appellant alleged that he was wrongfully discharged from his employment because he

attempted to expose fraud and waste in state government. A jury determined that he had in fact been wrongfully terminated. Fraud and waste in government are clearly matters of eminent importance and interest to the citizens of this State and the private attorney general doctrine should be applied in this case.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent of Justice Hunt.

_____
Justice

14