No.   92-582

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

FIRST NATIONAL BANK OF GLASGOW,

     Plaintiff and Respondent,

  v.

FIRST SECURITY BANK OF MONTANA, N.A.,

     Defendant and Appellant.

APPEAL FROM:   District   Court   of   the   Seventeenth   Judicial
                District,
                In and for the County of Valley,
                The Honorable Leonard H. Langen, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Ward E. Taleff, Alexander, Baucus & Linnell,
          Great Falls, Montana; Matthew W. Knierim,
          Christoffersen & Knierim, Glasgow, Montana

     For Respondent:

          Robert Hurly, Attorney at Law,
          Glasgow, Montana

Submitted on Briefs:   March 18, 1993

Decided:   August 17, 1993

Filed:   AUG 17 1993

FILED

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, First Security Bank, appeals from an order of the District Court of the Seventeenth Judicial District in Valley County which granted summary judgment to First National Bank and awarded attorney fees in the amount of $40,000. We reverse the order of the District Court.

The dispositive issue on appeal is whether First National had a right to recover attorney fees which were incurred as a result of litigation with First Security.

First Security began lending money to James J. Murnion for his ranch operations in 1976. In 1977, Murnion gave First Security a lien on the cattle that he then owned to secure payment of his loans. In 1980, Murnion bought additional cattle with money borrowed from First National. He gave First National a lien on those cattle to secure repayment of that loan.

In 1982, when Murnion began experiencing financial difficulties, he had to sell his cattle in order to repay his loans. However, a dispute arose between the banks over whose lien on the cattle purchased in 1980, and their progeny, had priority. The cattle were sold, with some of the proceeds paid to First National, and other proceeds from the sale of the disputed cattle placed in trust by First Security. The record does not clearly establish how much was realized by First Security from the sale of the cattle in which First National claimed a security interest.

On March 19, 1985, First National filed a complaint consisting of four counts which named First Security as a defendant. In the

2

first count, it sought a declaratory judgment establishing the priority of its security interest in the Murnion cattle. Its second count sought damages for intentional interference with the contract that it had with Murnion, and the third count sought damages caused by First Security's alleged violation of the covenant of good faith and fair dealing. In count four, First National asked the court to order an accounting by First Security of the proceeds it recovered from the sale of some of the cattle owned by Murnion and in which First National alleged a prior security interest.

Both parties moved for summary judgment. On September 6, 1985, the District Court issued its memorandum opinion and order which denied First Security's motion and granted First National's motion. The District Court concluded that First National's lien was a first lien on all cattle owned by Murnion bearing the "Rafter B" brand, and any of the progeny from those cattle. The District Court specifically held that First National's lien had priority over any lien claimed by First Security.

We affirmed the District Court's first order granting summary judgment. *First National Bank of Glasgow v. First Security Bank of Montana* (1986), 222 Mont. 118, 721 P.2d 1270.

Before the first appeal, Lynn D. Grobel, president of First National, filed an affidavit in the District Court in which he stated that First Security had received $40,947.93 from the sale of "Rafter B" branded calves. After remittitur from this Court to the District Court, First Security offered to pay $40,000, plus

3

interest and costs allowed by law, to First National. However, a dispute arose over the issue of whether First National was entitled to attorney fees, and if so, the amount.

On May 22, 1987, First National filed a second motion for partial summary judgment pursuant to counts one and four of its complaint. In its motion, First National acknowledged that First Security had paid the remaining principal balance in the amount of $40,000, plus interest, which it had received from the sale of the "Rafter B" cattle. However, First National alleged that no payment had been made by First Security for the attorney fees and costs incurred by First National to establish the priority of its lien. It alleged that its promissory note and security agreement with Murnion provided for an award of attorney fees to First National in the event that collection efforts were necessary, and further provided that proceeds from the disposition of the cattle would be applied to payment of the bank's attorney fees and legal expenses.

There was no allegation that there were any further proceeds from the sale of the "Rafter B" cattle, other than those that had already been paid to First National. Nor was there any allegation that First National's attorney fees were incurred because of any efforts by Murnion to avoid repayment of First National's loan. First National alleged that to collect the debt owed by Murnion it had incurred attorney fees in the amount of $40,384.61, and that pursuant to its written agreements with Murnion, it was entitled to collect that amount in full from the proceeds of the sale of "Rafter B" cattle.

4

In support of its motion, First National filed Murnion's affidavit which stated that he thought the amount of attorney fees being claimed was reasonable. First National also attached the affidavit of Lynn Grobel setting forth the exact amount of attorney fees which had been incurred as a result of First National's litigation with First Security over lien priority. Significantly, he stated in his affidavit that it was necessary to incur the attorney fees because of First Security's claim to the proceeds from sale of "Rafter B" cattle. He made no statement that any conduct by Murnion caused First National to incur the attorney fees for which this claim was being made.

First National did not and has not alleged that there is any statutory basis for its attorney fee claim. Nor has it alleged that there was a contract to which First Security was a party which serves as a basis for an award of attorney fees from First Security. It simply alleged that because its contracts with Murnion provided for attorney fees incurred to collect the debt owed by Murnion, First Security was obligated to pay those fees from the proceeds of "Rafter B" cattle which it sold.

Nothing further was done about First National's second motion for partial summary judgment until August 31, 1992. At that time, oral arguments were presented by both parties to the District Court. However, no evidence was offered by First National in addition to the previously mentioned affidavits. At the conclusion of that hearing, the District Court held that since the security agreement entered into between First National and Murnion provided

5

for attorney fees to First National from the disposition of the secured cattle, the bank's security interest included not only the amount owed for principal and interest, but also reasonable attorney fees which it had to expend in order to enforce its security agreement. The District Court went on to hold that since First Security had prevented First National from exercising its right to possession of the secured property, it stood in the shoes of Murnion and was obligated to pay those attorney fees. The District Court held that the affidavits were sufficient to establish the amount of fees owed up to the date of the court's summary judgment.

The District Court's judgment was certified as a final order pursuant to Rule 54(b), M.R.Civ.P., and First Security filed its notice of appeal from that judgment.

On appeal, First Security argues first that there was no legal basis for an award of attorney fees in this case, and second, that if attorney fees are appropriate, it was at least entitled to an evidentiary hearing at which the reasonableness of the attorney fee amount could be contested. We conclude that First Security's first argument is dispositive.

We have previously held that:

Montana adheres to the "American Rule" regarding attorneys' fees. Under the American Rule, a party in a civil action is generally not entitled to fees absent a specific contractual or statutory provision. *In re Marriage of Hereford* (1986), 223 Mont. 31, 723 P.2d 960.

*Matter of Dearborn Drainage Area* (1989), 240 Mont. 39, 42, 782 P.2d 898, 899.

In this case, there was no contract between First National and First Security which could serve as the basis for the award of attorney fees. Neither has any statutory basis for an award of attorney fees been brought to the attention of this Court.

Instead, First National contends that it had an agreement with Murnion that he would pay attorney fees that were incurred to collect his debt to First National and that those fees could be deducted from the sale of his cattle which were used to secure his loan with First National. Therefore, according to First National, it was entitled to collect those fees from the amount realized by First Security from the sale of Murnion's "Rafter B" branded cattle. The District Court agreed with First National's theory. Its order was, in reality, an award of attorney fees imposed on First Security based on a contract to which First Security was not a party. However, for several reasons, we conclude that First National's argument is without merit.

First, there was no evidence in this case that First Security held proceeds from the sale of "Rafter B" cattle, other than those which had already been turned over to First National. The sketchy evidence that does appear in the record seems to be to the contrary.

Second, First National acknowledged that all proceeds from the sale of "Rafter B" cattle to which it was entitled for repayment of the principal and interest owed by Murnion had been turned over by

7

First Security. Any additional proceeds were owed by Murnion to First Security, and were, in fact, inadequate to pay that entire debt. Therefore, any award of attorney fees would, as a practical matter, be paid by First Security, not Murnion, and no authority has been provided which would authorize Murnion to bind a third party to a contractual obligation for payment of attorney fees simply because it chose to litigate the priority of its lien. However, that is the practical result of the District Court's order.

Finally, all of the attorney fees which are the subject of First National's claim were, according to its own president, incurred because of its dispute with First Security. They were not incurred because of any alleged lack of cooperation by Murnion. Even though the District Court's order apparently had no practical impact on Murnion, the precedent that First National asks us to establish would mean that future debtors could see the value of their assets reduced by tens of thousands of dollars for attorney fees based on a dispute between two lending institutions in which the debtor was not involved and over which the debtor had no control. Such a result is contrary to the principals of contract law which encourage parties to mitigate their expenses.

For these reasons, we reaffirm our adherence to the "American Rule" regarding attorney fees. Since there was neither a statutory nor contractual basis for the District Court's award of attorney fees to First National, we reverse the District Court's order of summary judgment which awarded attorney fees, and remand this case

8

to the District Court for resolution of the remaining counts of First National's complaint and for further proceedings consistent with this opinion.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____

_____
                    Justices


Justice R. C. McDonough, Retired, did not participate in this decision.

9

August 17, 1993

### CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Ward E. Taleff
Alexander, Baucus & Linnell
P.O. Box 2629
Great Falls, MT 59403

Matthew W. Knierim
Christoffersen & Knierim
P. O. Box 29
Glasgow, MT 59230

Robert Hurly
Attorney at Law
P.O. Box 1170
Glasgow, MT 59230

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy